IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JOSEPH DEION PAGE, #648286,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:25-cv-01350 |
| | ) Judge Trauger |
| **TENNESSEE BOARD OF PAROLE** | ) |
| **AND PARDONS, et al.,** | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Joseph Page, a state prisoner incarcerated at the Morgan County Correctional Complex (MCCX) in East Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), as well as Motions for Preliminary Injunction (Doc. No. 3) and Temporary Restraining Order (Doc. No. 4). The court reserved ruling on these injunctive motions until the issue of the filing fee was resolved. (Doc. No. 9.) On December 30, 2025, the plaintiff filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 14.)

The case is before the court for ruling on the plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. APPLICATION TO PROCEED IFP

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because the plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to prepay the entire filing fee, that IFP application (Doc. No. 14) is **GRANTED**.

Regardless of their indigency, prisoners are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be

paid in installments over time via an assessment against his inmate trust account. *Id.* § 1915(b)(1)–(2).

Accordingly, the plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which the plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

A. <u>Legal Standard</u>

In cases filed by prisoners, the court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune

from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

B. Allegations of the Complaint

The following parties are named as defendants in the Complaint: the Tennessee Board of Parole and Pardons; the Tennessee Department of Correction (TDOC) and TDOC Commissioner

3

Frank Strada; the MCCX; the MCCX Disciplinary Board; MCCX Warden Shawn Phillips[1] and Associate Wardens Stacey Oakes and Zachary Pounds; and MCCX officials Sgt. Justin Ball, Disciplinary Board Chairperson Elizabeth Gibson, Kendra Sharp, Hannah Ratliff, Alan Bunch, and Brandy Hutson.[2]

The Complaint alleges that, because of disciplinary proceedings against the plaintiff that led to his confinement in segregation without due process between March and August of 2024, his application for parole was denied on October 30, 2024. (Doc. No. 1 at 8–9.) Due to being labeled a snitch in front of his entire pod by Sgt. Ball and Disciplinary Board Chairperson Gibson in August 2024, the plaintiff was forced to request placement in protective custody. (*Id.* at 9–10.) He has remained in protective custody since that time and has suffered atypical and significant hardships in those heightened security conditions. (*Id.* at 10.) The plaintiff also alleges that he slipped and injured his neck and back in August 2024, due to not being provided with an "ADA compliant shower that meets his handicap requirements." (*Id.* at 11.)

While living in protective custody, the plaintiff has been denied the supplies he needed to clean his cell for "months" by "the CCO of high security inmates," Brandy Hutson, despite his cell "being flooded with raw sewage and feces infused water." (*Id.* at 10.) He alleges that he "was forced to go days without praying" and otherwise suffered "extreme[] infringe[ment]" of his right to exercise his Muslim faith." (*Id.* at 10–11; 14 (alleging "[a]t least 100 missed salaat," or daily prayers, "due to defendants not providing cleaning chemicals for months").) He also "claims Associat[e] Warden Stacey Oakes discriminated against Muslims by not allowing Muslim clergy access like Christian clergy." (*Id.* at 11.)

The Complaint also contains the following brief, conclusory allegations: (1) that the

---

[1] The Complaint identifies this defendant with the first name "Sean," but the plaintiff recently corrected this misspelling. (*See* Doc. No. 16.)

[2] The Complaint identifies this defendant with the last name "Hudson," but the plaintiff recently corrected this misspelling. (*See* Doc. No. 17.)

plaintiff was discriminated against with regard to his disciplinary sanctions because he is from Chicago; (2) that Associate Warden Zachary Pounds retaliated against him in some unidentified way because he filed a grievance criticizing security in his high security unit on January 5, 2025; (3) that "many" of the grievances he filed seeking to be transferred have gone missing; (4) that his requests for TDOC contracts with food and medical providers were effectively denied because he was unable to pay for them; (5) that he lost a welding class placement and otherwise suffered "lost wages and potential employment"; (6) that his television was unjustly confiscated when he moved to the high security unit; and (7) that he "was assaulted by inmates and defendants refused to write it up." (*Id.* at 10–11, 13–14.) In a supplement to the Complaint, the plaintiff claims that Stacey Oakes entered his housing unit and "ordered Plaintiff to give him the phone" on December 8, 2025, in retaliation for the plaintiff's December 5 notice to defendants via MCCX's "in-house mail" that they had been sued. (Doc. No. 13.)

The Complaint does not request any relief. The plaintiff's Motion for Preliminary Injunction (Doc. No. 3) requests an order enjoining the state to release him on parole.

C. <u>Analysis</u>

The plaintiff appears to have placed his Complaint in the MCCX outgoing mail on November 12, 2025 (*see* Doc. No. 2 at 4); it was received for filing in this court on November 20, 2025. Accordingly, the June–August 2024 disciplinary proceedings referenced in the Complaint and subsequently documented on this record (*see* Doc. No. 15), the plaintiff's initial placement in protective custody, his being publicly referred to as a snitch in August 2024, his injury in the shower in August 2024, and the denial of his parole application on October 30, 2024, all took place more than one year prior to the date this action was filed.

"Although the statute of limitations is an affirmative defense that a plaintiff ordinarily need not plead to state a claim, dismissal of the plaintiff's claim is appropriate when 'the allegations in the complaint affirmatively show that the claim is time-barred.'" *Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 364 (6th Cir. 2024), *cert. denied sub nom. Wershe v. Detroit*, 145 S. Ct. 1128 (2025) (citing *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 86 F.4th 1168, 1178 (6th Cir. 2023)). No statute of limitations expressly applies to claims under Section 1983, which instead "borrow the personal-injury statute of limitations from the state in which the claim arose." *Id.* at 365 (quoting *Zappone v. United States*, 870 F.3d 551, 559 (6th Cir. 2017)).

In Tennessee, the applicable limitations period is one year. *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1161 (6th Cir. 2021) (citing Tenn. Code Ann. § 28-3-104(a)(1)). Accordingly, the Complaint's claims based on events that occurred more than one year prior to this action's filing, at which time the plaintiff knew or should have known that he had been injured, are time-barred. *See Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) ("[U]nder § 1983, the statute of limitations begins to run when the plaintiff knows or has reason to know," through the exercise of reasonable diligence, "of the injury that is the basis of the action.") (citations omitted).

The plaintiff appears to recognize this timing issue. The Complaint refers to MCCX Warden Shawn Phillips "and his staff erect[ing] barriers hindering plaintiff from timely bringing a non-frivol[ou]s suit before the court." (Doc. No. 1 at 8; *see also id.* at 14 ¶ 22.) However, it does not elaborate on the nature of the alleged barriers to filing suit. Even if this conclusory allegation could be construed as an attempt to seek equitable tolling of the limitations period, federal courts "apply state tolling rules unless they're inconsistent with federal law," *Heard v. Strange*, 127 F.4th 630, 634 (6th Cir. 2025), and Tennessee does not recognize the doctrine of equitable tolling in civil cases. *See Redwing v. Cath. Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). Instead, Tennessee recognizes equitable estoppel and fraudulent concealment, *id.*, neither

6

of which are properly invoked here because the plaintiff does not allege that any defendant made specific promises to induce him to delay filing suit (estoppel) or took steps to prevent him from discovering his injury (concealment). *See id.* at 460–62. Accordingly, the plaintiff's claims arising from events alleged to have occurred prior to November 12, 2024 are subject to dismissal as untimely.

One of those untimely claims is asserted against the one suable defendant who resides in the Middle District of Tennessee, TDOC Commissioner Frank Strada, who is implicated by virtue of (allegedly) failing to heed a multitude of grievance appeals submitted to him following the various disciplinary actions taken against the plaintiff. (*See* Doc. No. 1 at 10 ¶ 19, 11 ¶¶ 31–32, 16 ¶ E.4.) Regardless of timeliness, any claim that Strada disregarded the plaintiff's grievance appeals must fail "because inmates do not have an inherent constitutional right to any particular state-created grievance procedure or even to an effective grievance procedure." *Landers v. Cadreche*, No. 3:19-CV-00932, 2020 WL 13890323, at *1 (M.D. Tenn. Feb. 19, 2020) (citing *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001)). So Strada is properly dismissed from this case.

Furthermore, while TDOC itself and the Tennessee Board of Parole have offices in this District, "neither the TDOC nor the Board of Parole are suable entities in a § 1983 suit" because they are equivalents of the State of Tennessee, which is not a person, *Scott v. Tennessee Bd. of Parole*, No. 1:22-CV-259-TAV-SKL, 2022 WL 16953627, at *2 (E.D. Tenn. Nov. 15, 2022)—and Section 1983 only applies against a "person who . . . subjects, or causes to be subjected, any citizen" to a deprivation of federal rights. 42 U.S.C. § 1983. These defendants are also properly dismissed from this case.

The remaining defendants—whose alleged wrongdoing may or may not have occurred prior to November 12, 2024—all appear to reside in Morgan County, Tennessee, where the MCCX is located and its officials work. Morgan County lies within the Eastern District of Tennessee. 28

7

U.S.C. § 123(a)(1). The plaintiff too is a Morgan County resident, and all the harms he claims to have suffered occurred/are occurring at MCCX.

The court in its discretion may transfer the case in the interest of justice and for the sake of convenience of parties and witnesses under 28 U.S.C. § 1404(a), "a codification of the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Section 1404(a) permits the transfer of this action "to any other district or division where it might have been brought" if the convenience of parties and witnesses and the interest of justice would be better served by such transfer. 28 U.S.C. § 1404(a); *see Burnett v. Caruso*, No. 10-cv-10749, 2010 WL 1609256, at *1 (E.D. Mich. Apr. 19, 2010). The decision to transfer an action pursuant to Section 1404(a) lies within the broad discretion of the district court. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *see K-Tex, LLC v. Cintas Corp.*, 693 F. App'x 406, 408 (6th Cir. 2017). "Although a plaintiff's choice of forum is generally given deference, that choice may be defeated, especially in cases when the plaintiff has little or no connection to the chosen forum." *Burnett*, 2010 WL 1609256, at *2.

Given that the plaintiff and all remaining defendants appear to reside in the Eastern District of Tennessee, where the conduct which formed the basis for any timely claims occurred, the court in its discretion and in the interest of justice will transfer this matter to the Eastern District.

### III. CONCLUSION

As explained above, the plaintiff's IFP application (Doc. No. 14) and his Motions to Correct Spelling of Party (Doc. Nos. 16 and 17) are **GRANTED**.

The plaintiff's Motion for Temporary Restraining Order (Doc. No. 4) is **DENIED** for noncompliance with procedural requirements, including the requirements that a separate memorandum of law and proposed order be filed and that the movant certify in writing his "efforts made to give notice of the request for a TRO and the reasons why notice should not be required." M.D. Tenn. L.R. 65.01(b), (c).

Defendants Tennessee Board of Parole and Pardons, Tennessee Department of Correction, and Commissioner Frank Strada are **DISMISSED** from this action, as the Complaint fails to state any viable claim against them. 28 U.S.C. § 1915A(a), (b)(1).

The Clerk shall **TRANSFER** this case to the Eastern District of Tennessee, Northern Division. The remaining pending motions (Doc. Nos. 3, 10, 11, 13) are reserved for ruling by the transferee court, which may conduct further screening of the Complaint's claims. *See Davis v. Gallagher*, 951 F.3d 743, 750–51 (6th Cir. 2020).

This court's file in the matter is closed.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

9

Case 3:25-cv-01350    Document 18    Filed 01/27/26    Page 9 of 9 PageID #: 166